UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADVANCED MAGNESIUM ALLOYS CORPORATION, d/b/a AMACOR, | ) ) ) |
| Plaintiff, | ) Case No. 1:20-cv-2247-RLY-MJD ) ) |
| v. | ) ) |
| ALAIN DERY and ALLIANCE MAGNESIUM INC., | ) ) ) |
| Defendants. | ) |

**DEFENDANT ALLIANCE MAGNESIUM INC.'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

## I. INTRODUCTION

A party cannot identify testifying expert witnesses in litigation, claim that the experts will testify and offer opinions on particular subjects as experts, and then prevent the adverse party from obtaining communications between the party's attorneys and the experts on the subject matters of their alleged expert testimony. Yet, that is exactly what Plaintiff AMACOR has done and insists on doing in this case. AMACOR identified two non-reporting expert witnesses, Jan Guy and Arie Shaked, to testify on a number of different subjects. Defendant Alliance Magnesium's counsel requested that AMACOR produce communications between AMACOR's counsel and the identified expert witnesses concerning the subject matters of their alleged expert testimony. AMACOR has refused to produce such records, even though the Civil Rules and applicable case law support Alliance's position that AMACOR has waived any attorney client privilege on the subjects of Guy and Shaked's alleged expert testimony.

This Court should order AMACOR to produce all communications between AMACOR's counsel and its identified expert witnesses on the subjects of their alleged expert testimony.

## II. LOCAL RULE 37(B) STATEMENT

Alliance attempted in good faith to resolve this discovery dispute with AMACOR. Specifically, on August 23, 2022, counsel for Alliance and AMACOR had a phone conference to discuss the issues raised in this Motion. On August 25, 2022, Alliance sent AMACOR a letter requesting the documents sought in this Motion. [Exhibit 1]. On September 8, 2022, Alliance sent AMACOR another letter further explaining its position. [Exhibit 2]. Counsel for the parties also had multiple phone and email communications in late August and early September discussing these issues, without resolution.

On September 15, 2022, during the regularly-scheduled joint status conference, the parties discussed this issue with the Court, which authorized Alliance to file a motion to compel. [Dkt. 399]. Counsel for the parties had another post-September 15 phone communication to further discuss these issues, without resolution.

## III. KEY FACTS

Guy is the owner/CEO of AMACOR. Shaked is the COO of AMACOR. Both Guy and Shaked are fact witnesses in this case.

On August 12, 2022, AMACOR identified Guy as a non-reporting liability expert witness under Rule 26(a)(2)(C) on the following subjects:

- 

[Exhibit 3, at pp. 1-2].   AMACOR also designated Guy as a liability expert related to ▋

▇

▇   [*Id.* at pp. 6 – 9].

AMACOR also designated Shaked as a non-reporting liability expert on the following subjects:

- 

[*Id.* at  pp. 11 – 12].   AMACOR also designated Shaked as a liability expert related to ▋

▇

▇ .   [*Id.* at pp. 16 – 19].

Included in the documents about which AMACOR has designated Guy and Shaked as liability experts are ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ [*Id.* at  pp.  6 – 9,  16 – 19] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇   ▇▇▇▇▇▇▇▇   ▇▇▇▇▇▇▇▇   ▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ .

[*Id.*]

3

## IV. ARGUMENT

Alliance's Motion seeks the production of documents (including communications) between (1) AMACOR's counsel and Guy and (2) AMACOR's counsel and Shaked, to the extent such communications relate to the subject matters about which they have been identified as non-reporting liability experts. Alliance is not seeking all communications between AMACOR's counsel and Guy and Shaked. Moreover, Alliance seeks such communications so that it can adequately rebut Guy's and Shaked's purported expert testimony at trial, and perhaps challenge Guy's and Shaked's purported expert testimony by the April 3, 2023 deadline for limiting or precluding expert testimony. [Dkt. 305].

By designating Guy and Shaked as non-reporting liability experts who will testify at trial, AMACOR has waived the attorney-client privilege and work product protection as to the communications sought by Alliance. Alliance's position is well grounded in the cases that have addressed the issue as well as in Rule 26 itself.

Rule 26 provides no protection for communications between non-reporting experts and counsel for a party. *See* Rule 26(a)(2)(C), 26(b)(4)(C). While Rule 26(b)(4)(C) protects some communications between counsel for a party and a Rule 26(a)(2)(B) reporting expert, it extends no such protection for non-reporting experts under Rule 26(a)(2)(C). If the Rules Committee wanted to afford some level of privilege to communications between non-reporting experts and counsel for a party, it easily could have done so. It did not. *See generally Trading Techs. Int'l v. IBG,* 2020 U.S. Dist. LEXIS 259934 (N.D. Ill. Sep. 14, 2020); *Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't of Human Servs., et al.*, 2013 U.S. Dist. LEXIS 207957 (N.D. Ill., Sep. 25, 2013); *United States v. Sierra Pac. Indus.*, 2011 U.S. Dist. LEXIS 60372, *33-

34 (E.D. Cal. 2011); *Luminara Worldwide, LLC v. RAZ Imps., Inc.,* 2016 U.S. Dist. LEXIS 158183 (D. Minn. Nov. 15, 2016).

Rule 26(b)(4)(C) expressly requires production of communications between counsel and a Rule 26(a)(2)(B) **reporting** expert to the extent that they "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." *See* Rule 26(b)(4)(C)(ii). In other words, if an attorney for a party provides any facts or data that are pertinent in any way to the expert's report, there is no privilege whatsoever. "The integrity of the expert discovery process is undermined if a party's expert can review materials, decide either as part of the expert's analysis or at counsel's direction not to rely on those materials, and then prevent inquiry into the matters by an opposing party by unilaterally declaring that the facts and data were not relied on in formulating the expert's opinion." *Hobson v. Dominguez*, 2014 U.S. Dist. LEXIS 35874, *16-17 (N.D. Ind., Feb. 28, 2014). This is precisely why "[a] testifying expert must disclose . . . whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination. *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005).

A number of cases have specifically addressed this issue in the context of non-reporting experts like Guy and Shaked. In *Trading Techs. Int'l,* 2020 U.S. Dist. LEXIS 259934, the defendant IBG designated an individual named Smaguine as a non-reporting expert pursuant to Rule 26(a)(2). Smaguine was a long-time employee of IBG. The district court explained that Smaguine was a hybrid fact and opinion witness with percipient knowledge of the case:

> Throughout his declaration, Smaguine explains how what IBG could have done to make a non-infringing alternative is similar to or different from what IBG actually did. His knowledge of what IBG actually did stems from his personal involvement in the projects he

5

> discusses. His percipient knowledge of this case is inextricably linked to the opinions he offers about hypothetical non-infringing alternatives.

*Id.* at \*\*10-11. The district court in *Trading Techs.* held that Smaguine "is therefore a hybrid fact and opinion witness not covered by work product protections and whose communications with counsel are not privileged under the *Sierra Pacific* line of cases." *Id.* at \*11. The district court granted the plaintiff's motion to compel and ordered production of communications between IBG's counsel and Smaguine. *Id.*

The district court in *Trading Techs.* relied upon the seminal case on this issue, *United States v. Sierra Pacific Indus.*, 2011 U.S. Dist. LEXIS 60372 (E.D. Ca. May 26, 2011). The *Sierra Pacific* case concerned the cause of and damages related to the "Moonlight Fire" from September 2007. The plaintiff, the United States, identified two hybrid non-reporting experts – both fire investigators – who investigated the Moonlight Fire for the United States and the California Department of Forestry and Fire Protection, respectively. These were the important fact witnesses for the plaintiff. Plaintiff tried to shield counsel's communications with the hybrid non-reporting experts based on privilege. The Court rejected plaintiff's arguments and compelled the production of "all documents and communications that [the hybrid non-reporting experts] considered – that is, generated, saw, read, reviewed, and/or reflected upon – in connection with their analysis of the Moonlight Fire, regardless of whether the documents ultimately affected their analysis." *Sierra Pac. Indus.*, 2011 U.S. Dist. LEXIS 60372, at \*36. The Court explained the importance of such production for non-reporting hybrid witnesses:

> [S]ome non-reporting witnesses, such as treating physicians and accident investigators, should be treated differently than reporting witnesses with respect to the discoverability of their communications with counsel. *See* Minutes, Civil Rules Advisory Committee Meeting (April 20-21, 2009) p. 14 ("The Committee did not want to protect communications by one party's lawyer with treating physicians, accident investigators,

6

>and the like. An employee expert, moreover, may be an important fact witness."). These type of witnesses are hybrid fact and expert opinion witnesses. **While it is desirable that any testifying expert's opinion be untainted by attorneys' opinions and theories, it is even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased. Therefore, at least in some cases, discovery should be permitted into such witnesses' communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias.**
>
>\*   \*   \*
>
>**If [hybrid non-reporting experts'] communications with counsel were protected, any potential biases in their testimony regarding the causes of the fire [the subject of the lawsuit] would be shielded from the fact-finder.**

*Sierra Pac. Indus.*, 2011 U.S. Dist. LEXIS 60372, at \*33-34 (emphasis added).

The district court in *Luminara Worldwide, LLC,* 2016 U.S. Dist. LEXIS 158183 came to the same conclusions as the courts in *Trading Techs.* and *Sierra Pacific.* In *Luminara,* the plaintiff designated Patton as a non-reporting testifying expert. *Id.* at \*2. Patton was one of the founding members of Luminara's predecessor-in-interest. *Id.* Defendants argued that "by putting Patton forward as a non-reporting expert witness under Rule 26(a)(2)(C), Luminara waived the attorney-client privilege with regard to materials and communications provided to Patton in connection with his testimony." *Id.* at \*\*4 – 5. The Magistrate Judge agreed with defendants' position, noting that "courts generally held that all documents and information disclosed to any testifying expert in connection with his testimony, including any communications with attorneys, were discoverable by the opposing party." *Id.* (citations omitted). After the plaintiff in *Luminara* filed objections to the Magistrate Judge's Order, the district court affirmed the decision regarding waiver of privilege for non-reporting expert witnesses. *Id.* at \*12; *see also Ill. League of Advocates for the Developmentally Disabled*, 2013 U.S. Dist. LEXIS 207957 (ordering defendant to produce

communications between counsel and the defendant concerning the contents of the defendant's expert report).

Based on Guy's and Shaked's designated statuses as non-reporting liability experts who are unquestionably also fact witnesses, and the above authorities, Alliance is entitled to the production of communications between AMACOR's counsel and Guy and communications between AMACOR's counsel and Shaked concerning the subjects identified in their respective expert disclosures.

AMACOR wants to be able to present Guy and Shaked as experts on the subjects about which they claim to be experts. AMACOR wants Guy and Shaked to provide liability expert opinions for the jury on subjects such as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ – unquestionably key issues in this case. Yet, AMACOR wants to shield from discovery, and from the jury, how and to what extent AMACOR's attorneys have influenced Guy's and Shaked's purported expert testimony.

The *Sierra Pacific* case and its progeny highlight exactly why disclosure of communications between a party's counsel and a designated non-reporting expert on the subjects of the expert testimony is critical. Discovery of such communications is the only way for the jury to know and evaluate the veracity of the purported experts' testimony, as opposed to the expert witnesses acting as conduits for the attorneys' theories. In the context of purported liability experts who are not producing report that can be questioned and rebutted - like Guy and Shaked - if a party's attorney influences, manicures, or drives the expert witnesses' testimony, the jury must be allowed to know the extent of the influence.

This is particularly important in this case. At her deposition on March 11, 2022, Guy could not identify with any clarity or precision her understanding of a trade secret, and her counsel

8

objected to her discussing the extent to which their opinions and communications educated her on the subject:

> Q. What is your layman's understanding of what a trade secret is?
>
> A. Something developed proprietary to your business.
>
> Q. And what is your layman's explanation based on?
>
> Mr. Barr: And in answering the question - -
>
> A. I don't know how to answer that.
>
> Mr. Barr: Ms. Guy? Ms. Guy, in answering the question, I'll instruct you not to answer as to any communications you had with counsel. But **if you have an understanding from something other than communications with counsel, you may answer**.
>
> A. I would say general knowledge from developing the technology that's employed at AMACOR, which I did.
>
> Q. Anything else you base that on, Ms. Guy?
>
> A. No.
>
> Q. Based on your layman's understanding, is there a difference between trade secrets and confidential information?
>
> A. I'm not sure.

[Exhibit 4 – Guy Dep. 63:18-64:15] (emphasis added).

> Q. Can you tell me, Ms. Guy, when, in your layman's understanding, confidential information and trade secrets would not be the same thing?
>
> A. No. Because, honestly, the more I'm thinking about your question, I'm having a hard time maybe differentiating between the two.

[*Id.* at 65:10-15].

> Q. Is there any scenario that you can think of where a publicly available photo on a website would be a trade secret of AMACOR's?
>
> A. I don't know.

9

[*Id*. at 95:12-15].

Guy's deposition testimony highlights precisely why Alliance must be able to explore the true nature of Guy's and Shaked's alleged expertise on the subjects about which they intend to testify as non-reporting experts - so that Alliance can present such evidence to the Court and/or jury. Guy could not distinguish a trade secret from confidential information in her March 2022 deposition, and her attorneys insisted that she not share any information related to their communications that might have informed any understanding she has. AMACOR's attorneys cannot, on the one hand, manicure or influence AMACOR's expert witnesses' testimony and, on the other hand, not allow anyone to question them on how they came to the alleged expert conclusions to which they came. That is precisely the holdings of the cases cited above on non-reporting experts who are also fact witnesses. *See supra.*

AMACOR's position during meet and confer communications was to offer to disclose communications only involving the preparation of the non-reporting liability expert disclosures themselves – a duration of a month or two predating AMACOR's August 12th expert disclosures. AMACOR's position is much too narrow durationally. It would preclude Alliance's ability to learn what communications AMACOR's counsel had with Guy and Shaked about the very topics in their expert disclosures to the extent such communications predated the preparation of the disclosures themselves. Again, the very rationale of the *Sierra Pacific* lines of cases is that discovery should be permitted into hybrid non-reporting experts' communications with counsel in order to prevent, or at least allow examination of, attorney influence. *See Sierra Pacific*, 2011 U.S. Dist. LEXIS 60372 at *10. Limiting the production of communications to those between AMACOR's counsel and Guy and Shaked for a short time period is inadequate, and would prohibit Alliance from fully exploring all of the communications that exist about the topics identified in

Guy's and Shaked's expert disclosures. It would also be inconsistent with Rule 26 and cases analyzing the exact issues before the Court here. *See supra*.

In sum, AMACOR cannot, on the one hand, identify and present Guy and Shaked as non-reporting liability experts on particular subjects and, on the other hand, deny Alliance the ability to review and explore the full universe of documents and communications Guy and Shaked have reviewed over time to purportedly become experts capable of opining to a jury about those subjects. Allowing AMACOR to proceed in such a manner would deny Alliance the ability to fully and fairly present its defenses to the allegations in the case, and would further unfairly inhibit Alliance's rebuttal of AMACOR's purported liability expert witnesses to a jury.

## V. **CONCLUSION.**

For the above reasons, Defendant Alliance Magnesium Inc. respectfully requests that this Court grant its Motion to Compel and enter an Order: (1) compelling AMACOR to produce documents (including but not limited to communications) between AMACOR's counsel and its designated liability expert witness Jan Guy that relate to the subjects of her expert testimony; (2) compelling AMACOR to produce documents (including but not limited to communications) between AMACOR's counsel and its designated liability expert witness Arie Shaked that relate to the subjects of his expert testimony; (3) ordering AMACOR to reimburse Alliance for the reasonable expenses and fees incurred in making this Motion; and (4) awarding Alliance all other just and appropriate relief.

Dated: October 11, 2022

        Respectfully submitted,

        /s/ Robert D. Shank
        Robert F. Seidler (#28432-29)
        Jackson Lewis P.C.
        211 North Pennsylvania Street, Suite 1700
        Indianapolis, Indiana 46204
        Tel: (317) 489-6930
        Fax (317) 489-6931
        Email: robert.seidler@jacksonlewis.com

        Robert D. Shank (#19558-49)
        Jackson Lewis P.C.
        201 E. Fifth Street, 26th Floor
        Cincinnati, Ohio 45202
        Telephone: (513) 898-0050
        Fax: (513) 898-0051
        Email: robert.shank@jacksonlewis.com

        *Attorneys for Defendant Alliance Magnesium Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of October, 2022 a copy of the foregoing was filed with the Court using the Court's CM/ECF System, which sent notice of this filing to all counsel of record. All parties may access this filing via the Court's CM/ECF System.

> */s/ Robert D. Shank*
> Robert D. Shank

4874-7020-3192, v. 1