IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADVANCED MAGNESIUM ALLOYS CORPORATION, d/b/a AMACOR, <br><br> Plaintiff, <br><br> v. <br><br> ALAIN DERY, ALLIANCE MAGNESIUM INC., and WOGEN RESOURCES AMERICA LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:20-cv-2247-RLY-MJD |

**AMACOR'S OPPOSITION TO ALLIANCE'S MOTION TO COMPEL**

Jan Guy and Arie Shaked, Plaintiff AMACOR's CEO and COO, spent the last 20 years developing and refining AMACOR's proprietary systems and processes that made it one of the leading magnesium recycling facilities in North America. AMACOR alleges that Alain Dery, AMACOR's former Vice President of Sales and Marketing, shared AMACOR's trade secrets with, or used them for the benefit of, Alliance Magnesium Inc. ("Alliance"), a startup competitor. Dery unjustly enriched Alliance by providing it with a head start in its competition with AMACOR. Since Ms. Guy and Mr. Shaked are the individuals with the most knowledge of AMACOR's business, AMACOR designated them as non-reporting experts to provide testimony about its systems and processes based on their personal knowledge acquired in the course of performing their duties. They will testify about the various categories of accumulated knowledge, expertise, and proprietary information AMACOR has developed over the years and uses in its business that is not generally known by its competitors. [Dkt. 408-1].

As AMACOR's two top executives, Ms. Guy and Mr. Shaked are also AMACOR's principal party representatives in this litigation. In such roles, they have communicated extensively

with AMACOR's counsel for over two years regarding the subject matter of this lawsuit. These communications, like all attorney-client communications, were made in confidence in order to obtain legal advice regarding the prosecution of AMACOR's claims.

Alliance now seeks to compel AMACOR to produce—as part of its request for all documents and communication that "relate" to the subject of Ms. Guy's and Mr. Shaked's expert testimony—all communications between AMACOR and its counsel regarding litigation strategy and the seeking and receiving of legal advice. There is no support for this request. The communications Alliance seeks are protected by the longstanding attorney-client privilege.

Alliance claims the 2010 amendment to Federal Rule of Civil Procedure 26 destroyed the attorney-client privilege. But the Advisory Committee that drafted the relevant amendment explicitly noted that communications between counsel and non-reporting experts are still protected by existing doctrines like the attorney-client privilege and work product doctrine. And no case has found a sweeping waiver of attorney-client privilege communications such as Alliance claims here, where the non-reporting experts are the functional equivalent of the entity itself. Rather, the cases cited by Alliance all involved ancillary personnel such as "treating physicians, accident investigators, and the like" (in the Advisory Committee's words) who would not be part of a control group and would have only limited interaction with counsel in a representative capacity. These cases did not involve the highest ranking officers of a company and the company's primary party representatives, as here.

Further, Alliance has no need to discover AMACOR's privileged communications. It claims to need them to test the credibility of Ms. Guy's and Mr. Shaked's expert testimony, in order to determine what information counsel may have fed them. But as the two top executives of the company from its inception, there is little their attorneys or anyone could tell them about their

own business. Further, if Alliance wanted to challenge the contents of their disclosures, Alliance should have designated its own expert witnesses. But it did not do so. So not having any means other than cross examination to do so, Alliance is looking to force AMACOR to waive years' worth of attorney-client privileged communications relating to the lawsuit as the price it has to pay for designating them as experts. Neither the federal rules nor applicable authorities condone such a result.

Alliance filed an Appendix containing its correspondence with AMACOR on this subject, but failed to attach AMACOR's responsive letters of August 29 and September 13, 2022, rebutting Alliance's legal position. AMACOR's letters are attached as Exhibits 1 and 2. Also, while Alliance states that during the joint status conference on September 15, 2022 the Court authorized Alliance to file a motion to compel [Dkt. 399], Alliance neglects to state that the Court noted its initial agreement with AMACOR's position. [Dkt. 404 at 8].

## ARGUMENT

Alliance moves this Court to compel AMACOR to produce privileged communications between Ms. Guy or Mr. Shaked and AMACOR's counsel that relate in any way to the subject matter of their expert testimony—including communications with counsel related to the prosecution of this lawsuit. In this context, Alliance's motion is unprecedented and should be denied.[1]

I. **Rule 26 Does Not Require the Disclosure of Communications Between Counsel and Non-Reporting Experts Protected by Other Privileges, Such as Attorney–Client Communications or Work Product.**

Rule 26 permits parties to rely on the testimony of two different categories of experts:

---

[1] AMACOR initially notes that Defendant Alain Dery has also designated himself as a non-reporting expert. Thus, if Alliance's argument prevails, it will apply equally to Dery, and Dery similarly would also have to produce all of his communications with counsel.

3

reporting and non-reporting. Reporting experts are those retained specifically to provide expert testimony, Fed. R. Civ. P. 26(a)(2)(B); non-reporting experts (or hybrid fact/expert witnesses) provide their expert testimony based on information gained through their own "percipient observations," *Guarantee Trust Life Ins. Co. v. American Medical & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013). This difference dictates different disclosure requirements: since reporting experts rely on counsel and the party to obtain information to form their opinions, the facts provided to the expert by counsel must be disclosed. *See Fidelity Nat. Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005). So while Rule 26(b)(4)(C) provides specific protections for certain other communications between reporting experts and counsel, the rule is silent as to non-reporting experts.

Alliance improperly reads into this silence an absolute waiver of all privileged communications between non-reporting experts and counsel. But the Advisory Committee's own notes on the relevant 2010 amendment dispel this conclusion and make clear that communications with non-reporting experts are still protected under long-standing privileges:

> The rule does not *itself* protect communications between counsel and other expert witnesses, such as those for whom disclosure in required under Rule 26(a)(2)(C). *The rule does not exclude protection under other doctrines, such as privilege or independent development of the work product doctrine.*

Fed. R. Civ. P. 26(b)(4) Advisory Committee's Notes (2010) (emphasis added); *see also United States v. Sierra Pacific Indus.*, No. Civ S-09-2445 KJM EFB, 2011 WL 2119078, at *5 (E.D. Cal. May 26, 2011) ("Thus the advisory committee notes explain that the new rule does not . . . disturb any existing protections.").

Here, the communications sought by Alliance's motion fall within the very definition of attorney-client privilege. *See United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014) ("Confidential communications between a client and her lawyer for the purpose of receiving legal

4

advice are protected by the attorney-client privilege."). Alliance requests "documents (including but not limited to communications) between AMACOR's counsel and" Ms. Guy and Mr. Shaked that "relate to the subjects" of their expert testimony. [Dkt. 409, p. 11]. Ms. Guy and Mr. Shaked are the two highest-ranking officers of AMACOR and are AMACOR's principal party representatives. (Ex. 2, p. 2). As such, their communications with counsel that "relate to the subjects" of their expert testimony also relate to the seeking and providing of legal advice regarding the prosecution of this lawsuit. As explained by the Advisory Committee, the amendment to Rule 26 was not intended to take away the ingrained privilege protecting these communications simply because the testimony of the client's top executives will also include expert opinions. These communications, then, are protected from disclosure and the 2010 amendments to Fed. R. Civ. P. 26(b)(4) were not intended to change that.

## II. The Cases Cited by Alliance are Factually Distinguishable, as the Non-Reporting Experts in Question in Those Cases Were Not Principal Party Representatives.

Alliance next claims that case law justifies its request for an absolute waiver of privilege for communications between Ms. Guy, Mr. Shaked, and AMACOR's counsel, and that such communications are necessary to rebut their expert testimony. But the cases on which Alliance relies do not support its argument, and Alliance does not need these communications anyway.

To start with, the "seminal case" relied upon by Alliance, *Sierra Pacific*, stopped short of finding that designating an individual as a non-reporting expert witness waives every privilege "for all cases involving non-reporting employee expert witnesses." 2011 WL 2119078, at *5; *see also Trading Techs. Int'l, Inc. v. IBG*, No. 10 C 715, 2020 WL 12309208, at *2 (N.D. Ill. Sept. 14, 2020) (relying on and adopting the opinion in *Sierra Pacific* since the Seventh Circuit has not "specifically weighed in on the question"). The *Sierra Pacific* court instead explained that discovery of attorney-client communications with non-reporting expert witnesses relates to certain

categories of witnesses, such as "treating physicians, accident investigators, and the like." 2011 WL 2119078, at *6 (quoting Minutes, Civil Rules Advisory Committee (February 2-3, 2009) P. 14).[2]

Notably excluded from this list are individuals whose communications with counsel principally involve the prosecution or defense of lawsuits. In *Illinois League of Advocates for Developmentally Disabled v. Illinois Dep't of Human Servs.*, No. 13 C 1300, 2013 WL 12447206, at *2 (N.D. Ill. Sept. 25, 2013), the court addressed this situation and declined to find a broad waiver of privilege such as Alliance now requests. There, the non-reporting expert was a "named defendant to this action," meaning, "his attorney communications involve both his legal defense and his expert opinion." *Id.* Noting the admonition expressed in *Sierra Pacific* that privilege is not waived for all non-reporting employee expert witnesses, the court declined to find a broad waiver of the attorney-client privilege for communications related to the legal defense. *Id.*

Although Ms. Guy and Mr. Shaked are not named parties, they are the highest ranking officers of AMACOR and are AMACOR's principal party litigation representatives. In that role, they have extensively communicated for over two years with counsel to direct AMACOR's prosecution of its claims and to seek legal advice. Like the defendant non-reporting expert witness in *Illinois League*, their communications involve both the litigation and the topics of their expert

---

[2] *Sierra Pacific* involved communications by two fire investigators testifying about the cause of a fire. In the words of that court:

> **[S]ome** non-reporting witnesses, **such as treating physicians and accident investigators**, should be treated differently than reporting witnesses with respect to the discoverability of their communications with counsel. See Minutes, Civil Rules Advisory Committee Meeting (April 20–21, 2009) p. 14 ("**The Committee did not want to protect communications by one party's lawyer with treating physicians, accident investigators, and the like**. . .")

2011 WL 2119078, at *10 [emphasis supplied]. Thus, after cabining the type of non-reporting expert it was addressing, the court stated that "at least in some cases" discovery should be permitted into communications with attorneys. *Id.*

6

disclosures. Ms. Guy and Mr. Shaked are thus the functional equivalent of the defendant in *Illinois League*, and their communicatios regarding this lawsuit should similarly be protected.

Another case providing a helpful point of analysis is *In re USGen New Eng., Inc.*, No. 03-30465, 2007 WL 2363353 (Bankr. D. Md. Aug. 16, 2007). There, the court held that the critical determinant was the source of the information that formed the basis of the witness' opinion and whether the information was obtained in the ordinary course of the witness' responsibilities or was provided by litigation counsel in order for the witness to form an opinion for the case. 2007 WL 2363353 at *11. The court then applied its analysis to various hybrid fact/expert witness employees who would be offering opinions and declared that attorney client or privileged materials would *not* have to be produced where the employee developed the knowledge forming his/her opinion in the course of performing his/her job. *Id*. at *12-*13. That is the case here, as Ms. Guy's and Mr. Shaked's testimony stems from what they have personally observed over the course of decades.

The other cases relied on by Alliance to reach a different conclusion are also inapposite. In each such case, the non-reporting expert witness was in a position that did not require them to regularly communicate with the company's counsel to direct and seek legal advice in the underlying litigation. *See Trading Techs. Int'l, Inc. v. IBG*, 2020 WL 12309208, at *2 (N.D. Ill. Sept. 14, 2020) (software engineer); *Luminara Worldwide, LLC v. Liown Electronics Co.*, 2016 WL 6774229, at *1 (D. Minn. Nov. 15, 2016) (inventor and outside consultant).[3] CEOs and COOs, like Ms. Guy and Mr. Shaked, have different types and volume of communications with counsel than software engineers and outside consultants. These communications should not be treated the same and should be protected by the attorney-client privilege, as explained by the Advisory Committee and the courts in *Sierra Pacific* and *Illinois League*.

---

[3] Although Luminara's non-reporting expert witness was a founder of Luminara's predecessor-in-interest, his only role for Luminara, the party to the lawsuit, was as a "paid consultant."

Alliance attempts to illustrate how Ms. Guy's testimony may be influenced by information obtained from her attorneys by taking an excerpt from her deposition testimony when she was testifying purely as a fact witness in March 2022. But the excerpt shows no such thing. In it, Alliance's counsel asked her a series of questions asking for her layperson's understanding of certain legal terms, such as the legal definition of a trade secret. [Dkt. 407-3, 63:18-21]. AMACOR's counsel cautioned Ms. Guy to not "answer as to any communications [she] had with counsel" but that if she had "an understanding from anything other than communication with counsel" she could answer." [*Id.* at 63:25 - 64:5]. Ms. Guy then answered the question by giving her lay understanding of trade secrets as "knowledge from developing the technology that's employed at AMACOR." [*Id.* at 64:6-7]. She then further answered other legal questions based on her lay understanding of what those legal terms meant, such as the difference between a trade secret and confidential information.

Alliance argues that Ms. Guy's alleged inability to give legal answers to legal questions being sought under the guise of her lay understanding demonstrated how anything she would know would have to be influenced by her attorneys. But the excerpt shows no such thing. It simply shows Alliance asking questions calling for a legal answer and Ms. Guy answering based on her own knowledge and *not* that of anything derived from communications with counsel. This hardly illustrates why Alliance needs to invade AMACOR's attorney-client privilege.

To be sure, Ms. Guy has also sought and received legal advice from counsel regarding AMACOR's trade secret and other claims, which is why AMACOR's counsel objected, and such advice is plainly protected from disclosure. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (noting that protecting these types of communications from discovery "encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide

8

candid advice and effective representation"). These communications have nothing to do with Ms. Guy's expert testimony, and Alliance's demand for them only illustrates how disclosure would reveal legal advice provided to AMACOR by its counsel relating to this lawsuit.

Finally, throughout its Brief Alliance justifies its request for attorney-client privileged communications as being needed to rebut Ms. Guy's and Mr. Shaked's expert testimony and expose any attorney caused bias. But Alliance had a chance to rebut this expert testimony by designating an expert of its own. Its failure to do so does not justify a waiver of AMACOR's attorney-client privilege. AMACOR also provided several examples of documents produced in this lawsuit that support Ms. Guy's and Mr. Shaked's testimony. Alliance can use these documents to attempt to rebut their testimony. Further, Alliance does not need these communications to argue bias, inasmuch as Ms. Guy's and Mr. Shaked's close identity with AMACOR should be sufficient alone to provide a basis for trying to impeach their testimony.

## CONCLUSION

For these reasons, AMACOR respectfully asks the Court to deny Alliance's Motion to Compel and grant AMACOR all other appropriate relief.

Dated: October 17, 2022

Respectfully submitted,

/s/ *Matthew B. Barr*
Matthew B. Barr (#26252-53)
Alexander P. Orlowski (#30794-29)
Zachary T. Miller (#35705-53)
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:  317-236-1313
Facsimile:  317-231-7433
mbarr@btlaw.com
aorlowski@btlaw.com
zmiller@btlaw.com

Irving M. Geslewitz (*pro hac vice*)
**MUCH SHELIST, PC**

191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: 312-521-2414
Facsimile: 312-521-2134
igeslewitz@muchlaw.com

*Attorneys for Plaintiff AMACOR*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 17th day of October, 2022, a copy of the foregoing was filed with the Court using the Court's CM/ECF System, which sent notice of this filing to all counsel of record. All parties may access this filing via the Court's CM/ECF System.

*/s/ Matthew B. Barr*