UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADVANCED MAGNESIUM ALLOYS CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:20-cv-02247-RLY-MJD<br>) |
| ALAIN DERY, et al., | )<br>)<br>) |
| Defendants. | ) |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on a motion to compel filed by Defendant Alliance Magnesium, Inc. [Dkt. 405.] For the reasons set forth below, the motion is **DENIED**.

**I. Background**

Plaintiff Advanced Magnesium Alloys Corporation ("AMACOR") alleges in this case that Defendant Alain Dery, who is AMACOR's former Vice President of Sales and Marketing, shared confidential information he obtained from AMACOR with Defendant Allied Magnesium, Inc., to aid Allied Magnesium in entering the magnesium recycling marking as a competitor of AMACOR. Jan Guy is the CEO of AMACOR and Arie Shaked is its COO. As such, they are Plaintiff's principal party representatives with regard to this lawsuit and have communicated extensively with counsel throughout the course of the litigation.

In its expert disclosures, Plaintiff states the following:

Jan Guy is expected to provide expert testimony under Federal Rules of Evidence 702, 703, and 705 on the following subject matters, which include AMACOR's accumulated knowledge, expertise, and proprietary information used in its

business that is not generally known by its competitors and that gives AMACOR its competitive edge in the magnesium market: (1) magnesium scrap pricing; (2) secondary magnesium pricing, including costing; (3) nonpublic information regarding AMACOR's customers, including data on customer requirements, preferences, idiosyncrasies, and contact information; (4) compilations of customers, suppliers, and other industry information that are unique to AMACOR; (5) marketing techniques; (6) trade secrets; (7) steps taken to keep trade secret information secret; and (8) actual, potential, and relative competitive advantages in the secondary magnesium industry provided by AMACOR's information, technologies, and accumulated knowledge and expertise, and proprietary information described in points (1) through (7), above.

***

Arie Shaked is expected to provide expert testimony under Federal Rules of Evidence 702, 703, and 705 on the following subject matters, which include AMACOR's accumulated knowledge, expertise, and proprietary information used in its business that is not generally known by its competitors and that gives AMACOR its competitive edge in the magnesium market: (1) scrap procurement methods, including shipping and storage of scrap; (2) AMACOR's proprietary system for evaluating magnesium scrap quality; (3) the time and cost required to create and implement a successful scrap procurement system; (4) nonpublic information regarding AMACOR's customers, including data on customer requirements, preferences, idiosyncrasies, and contact information; (5) compilations of customer, supplier, and other industry information that is unique to AMACOR; (6) trade secrets; (7) steps taken to keep trade secret information secret; (8) research into and development of new methods and methodologies for manufacturing, shipping, packaging, and marketing of product; sourcing scrap; and adaptation to different scrap grades; and (9) actual, potential, and relative competitive advantages in the secondary magnesium industry provided by AMACOR's information, technologies, and accumulated knowledge and expertise, and proprietary information described in points (1) through (8), above.

[Dkt. 415 at 3-4, 13-14.][1]

---

[1] The Court notes that much of the testimony regarding these topics will likely be fact testimony, not expert testimony. However, Plaintiff was wise to be overinclusive in its expert designation to avoid line-drawing issues as to the witnesses' testimony.

## II.  Discussion

At issue in the instant motion is Defendant's request that Plaintiff "produce communications between AMACOR's counsel and the identified expert witnesses concerning the subject matters of their alleged expert testimony" because, Defendant argues, "AMACOR has waived any attorney client privilege on the subjects of Guy and Shaked's alleged expert testimony."  [Dkt. 409 at 1.]  Defendant's argument is based almost entirely on the holding in *United States v. Sierra Pacific Indus.*, 2011 WL 2119078, (E.D. Ca. May 26, 2011), and cases that rely upon it.  As neither *Sierra Pacific* nor any of the other cases cited by Defendant are binding precedent, the Court must determine whether it is appropriate to follow them in this case.  Accordingly, the Court will begin with an examination of the reasoning of the *Sierra Pacific* decision.

### A.  Summary of the *Sierra Pacific* Opinion

In *Sierra Pacific*, the United States sought to recover for damages caused by a fire.  The United States designated as experts two individuals, Joshua White and Dave Williams, who investigated the fire in their capacities as employees of the California Department of Forestry and Fire Protection and the United States Forest Service, respectively, and prepared an Origin and Cause Report.  Both were designated as non-reporting witnesses; that is, witnesses who were not required to prepare an expert report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) because they were not "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."

The defendants in *Sierra Pacific* argued that "by designating White and Reynolds as testifying expert witnesses, the United States waived otherwise applicable [attorney-client] privilege and work-product protection" for communications between the witnesses and attorneys

3

for the United States and the State of California. *Sierra Pacific*, 2011 WL 2119078, at *1. In agreeing with the defendants, the court acknowledged that Rule 26 had been amended the prior year (2010) to explicitly protect as work product "communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications" fell under the following categories: (i) those relating to the expert's compensation; (ii) those that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed"; and (iii) those that "identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C). This change was made in response to the fact that, under the previous version of the rule,

> [m]any courts read the disclosure provision to authorize discovery of all communications between counsel and expert witnesses and all draft reports. The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects. Costs have risen. Attorneys may employ two sets of experts—one for purposes of consultation and another to testify at trial—because disclosure of their collaborative interactions with expert consultants would reveal their most sensitive and confidential case analyses. At the same time, attorneys often feel compelled to adopt a guarded attitude toward their interaction with testifying experts that impedes effective communication, and experts adopt strategies that protect against discovery but also interfere with their work.

2010 Advisory Committee Note to Fed. R. Civ. P. 26; *see also Yeda Research & Development Co., Ltd. v. Abbott GmbH & Co. KG,* 292 F.R.D. 97, 104, 2013 WL 2995924, at *7 (D.D.C. 2013) ("The 2010 amendment was, in essence, an effort to reign in courts that had held that the disclosure requirement of Rule 26(a)(2)(B) trumped *all* claims of privilege.") (emphasis in original) (citation omitted).

The new provision regarding work-product protection in the 2010 amendment explicitly applied only to reporting witnesses, however. Thus, the *Sierra Pacific* court

reasoned, the 2010 amendment did not change the law regarding the extent to which the attorney-client privilege and work product protection are waived for communications between a party's attorney and a non-reporting witness.

The court then looked to the law in the Ninth Circuit prior to the 2010 Amendment with regard to non-reporting witnesses. While acknowledging that the Ninth Circuit itself had never addressed the issue, the court implicitly agreed with the defendants' argument that "before the 2010 amendments courts in the Ninth Circuit followed a bright-line rule that designating an individual as a 'testifying expert' waives all otherwise applicable privileges and protections of communications with and information provided to that expert by counsel retaining the expert." See *Sierra Pacific*, 2011 WL 2119078, at *7 (citing the defendants' brief, which, in turn, cited *South Yuba River Citizens League v. National Marine Fisheries Service,* 257 F.R.D. 607, 610 (E.D. Cal. 2009) (explaining that "the work product rule does not protect materials, including attorney opinion, considered by a testifying expert in formation of his opinions"); *Ass'n of Irritated Residents v. Dairy,* 2008 WL 2509735, *1 (E.D. Cal. 2008) ("The majority view, and the better view . . . is that all things communicated to the expert and considered by the expert in forming an opinion must be disclosed even if it constitutes opinion otherwise protected as work product."); *S.E.C. v. Reyes,* 2007 WL 963422, at *1, n. 1 (N.D. Cal. 2007) (explaining that "courts have overwhelmingly . . . imposed a 'bright-line rule' that all materials considered by a testifying expert, including attorney work product, must be disclosed" and holding the same)). The court acknowledged that, while the cases cited by the defendants used the term "testifying expert," which "logically encompasses both reporting and non-reporting experts," none of the

cases actually involved non-reporting experts. *Sierra Pacific*, 2011 WL 2119078, at *7.[2]

However, the court further noted that "the United States cites no case from any time period within the Ninth Circuit finding that the privilege was not waived in the case of a non-reporting yet testifying expert." *Id.* at *9. The court therefore rejected the United States' argument that the relevant case law applied only to reporting experts.

> In the end, the *Sierra Pacific* court held as follows:

> As explained in detail above, the advisory committee notes to the 2010 amendments to Rule 26 show that the committee did not intend to either generally protect or generally not protect communications between a party's counsel and non-reporting experts. Although the committee considered protecting communications with non-reporting party employee experts, it ultimately decided not to do so. The committee recognized that the term "non-reporting" encompasses a varied class of experts who present unique policy considerations. For example, party employees and former employees, in-house counsel, independent contractors, treating physicians, and accident investigators might all be non-reporting expert witnesses.

> Some of these non-reporting witnesses should not be treated differently than reporting expert witnesses. For example, there is no immediately apparent policy reason to treat an employee expert whose duties regularly involve giving expert testimony any differently than an employee expert whose duties involve only intermittently giving expert testimony.

> However, some non-reporting witnesses, such as treating physicians and accident investigators, should be treated differently than reporting witnesses with respect to the discoverability of their communications with counsel. *See* Minutes, Civil

---

[2] Prior to the 2010 Amendment, the Seventh Circuit similarly used the term "testifying expert" when discussing the obligation to produce information considered by an expert witness. *See Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005). However, in noting that "[a] litigant is required to disclose to his opponent any information 'considered' by the litigant's testifying expert," the court in *Fidelity National* cited Rule 26(a)(2)(B) (1993 version), which applied only to reporting experts, as well as cases that involved reporting experts. *See NutraSweet Co. v. X-L Engineering Co.,* 227 F.3d 776, 785-86 (7th Cir. 2000); *Salgado ex rel. Salgado v. General Motors Corp.,* 150 F.3d 735, 741 n.6 (7th Cir. 1998); *In re Pioneer Hi-Bred Int'l, Inc.,* 238 F.3d at 1375-76. As *Fidelity National* itself also involved a reporting expert, the court's use of the term "testifying expert" cannot be read as making any finding regarding non-reporting experts.

>Rules Advisory Committee Meeting (April 20-21, 2009) p. 14 ("The Committee did not want to protect communications by one party's lawyer with treating physicians, accident investigators, and the like. An employee expert, moreover, may be an important fact witness."). These type [sic] of witnesses are hybrid fact and expert opinion witnesses. While it is desirable that any testifying expert's opinion be untainted by attorneys' opinions and theories, it is even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased. Therefore, at least in some cases, discovery should be permitted into such witnesses' communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias.
>
>Given the facts of this particular dispute, counsel's communications with White and Reynolds should not be protected. White and Reynolds are hybrid fact and expert witnesses. In addition to being current and former employees, White and Reynolds have percipient knowledge of the facts at issue in this litigation. As two of the three primary investigators of the Moonlight Fire, they have first-hand factual knowledge regarding the causes of the Moonlight Fire. If their communications with counsel were protected, any potential biases in their testimony regarding the causes of the fire would be shielded from the fact-finder.
>
>The court declines to hold that designating an individual as a non-reporting expert witness waives otherwise applicable privileges and protections in all cases, or even for all cases involving non-reporting employee expert witnesses. But in this particular factual scenario, the United States waived its privilege and work-product protection by disclosing White and Reynolds as expert witnesses.

*Id.* at 9-10.

### B. The Court Declines to Follow *Sierra Pacific*

As explained below, the Court's examination of the court's decision in *Sierra Pacific* leads to the inexorable conclusion that that court's reasoning does not bear up under scrutiny. Accordingly, the Court declines to follow *Sierra Pacific* or the cases that rely upon it.

In *Sierra Pacific*, there was no question that the communications at issue were protected by the attorney-client privilege and/or were work product that would be protected from disclosure had the witnesses in question not been designated as testifying experts. At least with regard to the communications subject to the attorney-client privilege, then, a waiver of the

privilege had to occur in order for the communications to be discoverable.[3] The *Sierra Pacific* court ultimately found that, under the particular facts of that case,[4] "the United States waived its privilege and work-product protection by disclosing White and Reynolds as expert witnesses." *Id.* at *10. But why did that constitute a waiver? The only reason given by the court is that "several district court opinions from within the Ninth Circuit . . . had clearly held [prior to the 2010 amendments to Rule 26] that such communications were not protected and must be disclosed upon the designation of the witness as a testifying expert." *Id.* at *9. Because nothing in the amendments changed anything with regard to non-reporting experts, the court reasoned, those pre-2010 holdings were still applicable to them, even though the amendments had altered the rule with regard to reporting experts.

The Court agrees that the amendment did not apply to non-reporting experts and, therefore, the rule for those experts remained the same after the amendment.[5] The problem is

---

[3] Pursuant to Federal Rule of Civil Procedure 26(b)(3), there are some narrow instances in which some work product is discoverable, even when no waiver has occurred.

[4] The Court notes that the *Sierra Pacific* court was careful to state that it "decline[d] to hold that designating an individual as a non-reporting expert witness waives otherwise applicable privileges and protections in all cases, or even for all cases involving non-reporting employee expert witnesses." It is unclear how the question of whether a privilege waiver occurs by taking a certain action—naming someone as a non-reporting expert—can depend upon the facts of a particular case. "'Waiver' commonly extends to the waiver of a known right or privilege. *See, e.g.,* 28 Am.Jur.2d, *Estoppel & Waiver,* § 154, at 836 (1966). Simply put, 'a prerequisite ingredient of the waiver of a right or privilege consists of an intention to relinquish it.' *Id.* at § 158." *TMF Tool Co. v. Siebengartner*, 899 F.2d 584, 590 (7th Cir. 1990). The Court questions whether someone can be found to have intentionally relinquished a privilege if a determination of whether waiver occurred is only made after the fact by a judge who must examine the particular facts of the case and a make a judgment call.

[5] Indeed, this is explicitly recognized in the 2010 Advisory Committee Notes to Rule 26, which state, in relevant part:

> The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose

8

that the *Sierra Pacific* court's determination that non-reporting and reporting experts were treated the same with regard to waiver prior to 2010 is unsupported. As the *Sierra Pacific* court noted, none of the cases cited by Defendants involved non-reporting experts. *Id.* at *5 ("Defendants contend that there has long been a bright-line rule in the Ninth Circuit that disclosing any witness as a testifying expert waives all privileges; however, none of the cases that they cite actually involved non-reporting experts."). Nor does the *Sierrra Pacific* court cite to any other case that examined the issue and held that a waiver occurred with regard to non-reporting experts.[6]

---

behalf the witness will be testifying . . . . The rule does not itself protect communications between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C). The rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine.

[6]The *Sierra Pacific* court cited to *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 397 (N.D. Cal. 1991), and *Mushroom Assocs. v. Monterey Mushrooms, Inc.*, 1992 WL 442898, at *5 (N.D. Cal. Aug. 21, 1992), two cases that were decided prior to the 1993 Amendment to Rule 26, which is when the requirement of an expert report and, therefore, the distinction between reporting and non-reporting experts was first added to the rule. The former case examined only whether "written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications otherwise would be deemed opinion work product." *Intermedics*, 139 F.R.D. at 387. The court found that they were discoverable, "absent an extraordinary showing of unfairness that goes well beyond the interests generally protected by the work product doctrine," based on its application of a "truly open balancing analysis" that considered the purposes of the various provisions of Rule 26 as it existed at the time. The court did not mention the attorney-client privilege. The latter case did find a waiver of the attorney-client privilege and work product protection with regard to an employee who was also serving as an expert witness, but only as to "those documents which the employee considered when formulating his expert testimony," which the court defined narrowly to include only those documents that the witness "reviewed in preparation for his expert testimony." However, the implicated party had **agreed** to produce those documents; accordingly, the court did not need to, and did not, examine whether, absent an agreement, the privilege and protection would have been waived. *Mushroom Assocs.*, 1992 WL 442898, at *5. Rather, the issue before the court was whether the opposing party was entitled to a broader set of documents than was encompassed by the agreement; the court found that it was not. Finally, the Court notes that, prior to the 1993 Amendment, the notes to Rule 26(b)(4) stated the following: "It should be noted that the subdivision does not address itself to

9

In each case relied upon by the defendants in *Sierra Pacific*, the court based its finding of waiver on the same thing—the requirement of the expert report. As one court explained:

> Fed. R. Civ. P. 26(a)(2)(B) requires that reports be prepared for each testifying expert containing, among other things, the data or other information *considered* by the expert witness in forming the opinions. The Advisory Committee Notes to the 1993 Amendment indicate expressly that in light of this obligation to disclose all things considered by the witness in forming the opinions, litigants should no longer be able to argue that material furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed. II Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine,* pp. 995-96 (5th Ed. 2007) (Epstein). The majority view, and the better view according to Epstein, is that all things communicated to the expert and considered by the expert in forming an opinion must be disclosed even if it constitutes opinion otherwise protected as work product. Although there is no binding authority from the Court of Appeals for the Ninth Circuit, federal courts have adopted the majority view. See, *United States v. City of Torrance,* 163 F.R.D. 590, 593 (C.D. Cal. 1995); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.,* 1993 WL 360674 (C.D. Cal. Aug. 6, 1993); and *Intermedics, Inc. v. Ventritex,* 139 F.R.D. 384, 386 n. 1 (N.D. Cal. 1991).

*Ass'n of Irritated Residents*, 2008 WL 2509735, at *1 (emphasis in original); *see also South Yuba River Citizens League v. National Marine Fisheries Service,* 257 F.R.D. 607, 610 (E.D. Cal. 2009) (explaining that "the work product rule does not protect materials, including attorney opinion, considered by a testifying expert in formation of his opinions"); *S.E.C. v. Reyes,* 2007 WL 963422, at *1, n. 1 (N.D. Cal. 2007) (noting that since Rule 26 was amended in 1993 "to require the disclosure of 'the data or other information considered by [expert witnesses] in forming [their] opinions,' . . . courts have overwhelmingly, though not uniformly, imposed a

---

the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Thus, for purposes of determining the extent to which work product was discoverable, the Committee distinguished between pure expert witnesses and what the *Sierra Pacific* court called hybrid witnesses.

'bright-line rule' that all materials considered by a testifying expert, including attorney work product, must be disclosed." (citing *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Karn v. Ingersoll-Rand Co.*, 168 F.R.D. 633, 637-41 (N.D. Ind. 1996)). In other words, "because any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public, there is a waiver to the same extent as with any other disclosure." *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d at 1375-76 (internal citation omitted).

While none of these cases distinguish between reporting and non-reporting experts, instead using the term "testifying experts," it is axiomatic that a non-reporting expert does not have to provide a report and therefore does not have to reveal all of the information he or she considered in forming his or her opinions. Rather, a non-reporting expert need only provide "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26. Therefore, it is not the case that all of the information provided by counsel to a non-reporting expert is provided with the expectation that it will become public. The basis for finding a waiver of privilege and work product protection simply does not apply in the case of a non-reporting expert.

The plaintiff in *Sierra Pacific* made this exact argument, but it was rejected by the court. The court acknowledged that "[a]pparently, at least some members of the committee assumed that before the 1993 amendments all attorney-expert communications were protected," noting that

> [t]here is some support for the United States' position in the advisory committee's meeting minutes for the 2010 revisions, which, as explained above, undid the

11

effects of the 1993 amendments as to reporting expert witnesses. The 2010 committee minutes state:

> If we do not say anything about communications with employee witnesses, there may be a negative implication that they are not protected by work-product doctrine. This observation was met with the suggestion that before 1993, it would have been assumed that work-product protection applies to all attorney-expert communications. The 1993 Committee Note never purported to change that as to experts not required to make a Rule 26(a)(2)(B) report.

*Sierra Pacific*, 2011 WL 2119078, at *8 (citing Minutes, Civil Rules Advisory Committee Meeting (April 20-21, 2009) p. 8). However, the court concluded, "[w]hile this may have been the case in some jurisdictions, there is no support for that premise in the caselaw from courts within this circuit. Indeed, the pre-1993 caselaw is to the contrary." *Id.* As discussed above, however, the cited cases in *Sierra Pacific* did not actually examine the precise question of whether—and, if so, how—the attorney-client privilege is waived by a non-reporting expert. Thus, those cases are a slender reed on which to base a finding of waiver.

Finally, the Court notes that the court in *Sierra Pacific*, citing minutes from meetings of the Civil Rules Advisory Committee Meeting, discussed various policy reasons why communications with some non-reporting experts might be protected from disclosure while communications with other non-reporting experts might not be. The court concluded that "[w]hile it is desirable that any testifying expert's opinion be untainted by attorneys' opinions and theories, it is even more important that a witness who is testifying regarding his own personal knowledge of facts be unbiased. Therefore, at least in some cases, discovery should be permitted into such witnesses' communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias." *Id.* at 10. But, of course, the same can be said for **any** fact witness who prepares with counsel prior to testifying, and a client does not waive the attorney-client privilege

12

simply by testifying. Policy reasons alone cannot be the basis for finding waiver of attorney-client privilege or work product protection.

### C. Defendant's Other Arguments Are Unavailing

The bulk of Defendant's arguments in this case are based on the holding in *Sierra Pacific* and its progeny. However, neither Defendant nor the cases it cites provide what is missing from *Sierra Pacific*—a basis for the finding of waiver in the context of a non-reporting expert. *See* [Dkt. 409 at 5-6] (citing *Sierra Pacific* as well as *Trading Techs. Int'l, Inc. v. IBG*, 2020 WL 12309208, at *1-2 (N.D. Ill. Sept. 14, 2020); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 2016 WL 6774229, at *3 (D. Minn. Nov. 15, 2016); *Illinois League of Advocs. for Developmentally Disabled v. Illinois Dep't of Hum. Servs.*, 2013 WL 12447206, at *2 (N.D. Ill. Sept. 25, 2013)).[7]

---

[7] Defendant asserts in its reply brief that "[w]ithout exception, each of the cases addressing the issue at hand resulted in the court finding a waiver of the attorney-client privilege as to the subjects of the non-reporting expert's designated expert testimony." [Dkt. 414 at 1-2] (citing *Trading Techs. Int'l*, 2020 WL 12309208; *Sierra Pacific*, 2011 WL 2119078; *Luminara Worldwide*, 2016 WL 6774229; *Ill. League of Advocs.*, 2013 WL 12447206. This is simply not true. Indeed, one of the cases cited by Defendant does not support the broad ruling they seek in the instant motion. In *Illinois League of Advocates*, the court ordered the disclosure of only a "limited range of communications concerning [the witness's] short [disclosure]"—"all communications identified in the privilege log between [the expert] and Defendants' counsel concerning the contents of the expert [disclosure]." 2013 WL 12447206, at *2. This falls short of ordering production of all communications relating to the subject matter of the expert testimony, which is what Defendant seeks here. Further, the *Sierra Pacific* court discussed, and rejected, a case that reached the contrary holding, *Graco, Inc. v. PMC Global,* 2011 WL 666056 (D.N.J. February 14, 2011), and Plaintiff cites to an additional case, *In re USGen New England, Inc.*, 2007 WL 2363353, at *12 (Bankr. D. Md. Aug. 16, 2007), that also holds to the contrary with regard to experts who "are truly hybrid fact/expert witnesses," rather than "retained expert wolves hiding in hybrid fact/expert sheep's clothing." Defendant's sweeping statement ignores both of these cases entirely. In addition, the Court's own research has revealed additional cases that declined to find the type of waiver urged by Defendant. *See PACT XPP Techs., AG v. Xilinx, Inc.*, 2012 WL 1205855, at *4 (E.D. Tex. Apr. 11, 2012); *Pipeline Prods., Inc. v.*

13

Aside from these cases, with which, as discussed at length above, the court disagrees, Defendant proffers only the same types of policy reasons pointed to by the *Sierra Pacific* court, arguing:

> The *Sierra Pacific* case and its progeny highlight exactly why disclosure of communications between a party's counsel and a designated non-reporting expert on the subjects of the expert testimony is critical. Discovery of such communications is the only way for the jury to know and evaluate the veracity of the purported experts' testimony, as opposed to the expert witnesses acting as conduits for the attorneys' theories. In the context of purported liability experts who are not producing report [sic] that can be questioned and rebutted—like Guy and Shaked—if a party's attorney influences, manicures, or drives the expert witnesses' testimony, the jury must be allowed to know the extent of the influence.

[Dkt. 409 at 8.] But the attorney-client privilege routinely shields from discovery information that would be extremely useful to opposing counsel. That is not a reason to find that it has been waived. The existence of the privilege is based on the determination that its purpose— "to encourage clients to make full disclosure to their attorneys"—is important enough to outweigh the fact that it "may operate 'in derogation of the search for truth.'" *United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (Aug. 29, 2013) (citation omitted). Here, Plaintiff would undoubtedly love to see the communications between defense counsel and the high-level employees of Defendant who will testify as fact witnesses in this case in order to show any influence of counsel over that testimony; an attorney preparing a fact witnesses for trial might "influence[], manicure[], or drive[]" that witness's testimony, the same as with a so-called hybrid witness. Indeed, the same can be said for reporting experts, but Rule 26 still expressly protects most of those communications from

---

*Madison Companies, LLC*, 2019 WL 3973955, at *8 (D. Kan. Aug. 22, 2019); *GSI Grp., Inc. v. Sukup Mfg. Co.*, 2007 WL 853959, at *1 (C.D. Ill. Mar. 16, 2007).

14

discovery. With regard to its access to privileged communications, Defendant is no worse off than it would be if Plaintiff had chosen to use reporting experts instead of Guy and Shaked.[8] Further, given the fact that Guy and Shaked are essentially the embodiment of Plaintiff in this case, the jury will be fully aware of their vested interest in the outcome in this case and the potential effect that interest could have on their testimony.

### III. Conclusion

For the reasons explained herein, the Court determines that Plaintiff did not waive the attorney-client privilege or work product protection for counsel's communications with Guy and Shaked by naming them non-reporting experts in this case. Accordingly, Defendant's motion to compel those communications, [Dkt. 405], is **DENIED**. Because Defendant's position was supported by case law, the Court finds that an award of attorney fees with regard to this motion is not appropriate. *See* Fed. R. Civ. P. 37(a)(5)(B) (court must not award fees for unsuccessful motion to compel if "the motion was substantially justified").

SO ORDERED.

Dated: 7 NOV 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[8] Of course, Defendant is still entitled to discover the "facts or data the party's attorney provided" to Guy and Shaked that they "considered in forming the opinions to be expressed," because facts and data are not privileged. *See Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.