UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADVANCED MAGNESIUM ALLOYS CORPORATION, d/b/a AMACOR, <br><br> Plaintiff, <br><br> v. <br><br> ALAIN DERY, ALLIANCE MAGNESIUM, INC., now d/b/a TERGEO CRITICAL MINERALS, INC., and WOGEN RESOURCES AMERICA, LLC, <br><br> Defendants. | No. 1:20-cv-02247-RLY-MJD |

**ENTRY ON DEFENDANTS ALAIN DERY'S AND ALLIANCE MAGNESIUM, INC.'S OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING PLAINTIFF AMACOR'S MOTION FOR SANCTIONS FOR SPOLIATION**

On September 8, 2023, the Magistrate Judge issued a Report and Recommendation recommending that the court grant Plaintiff's Motion for Sanctions for Spoliation Against Defendants Alain Dery and Alliance Magnesium, Inc., now d/b/a Tergeo Critical Mineral's, Inc. (hereinafter "Alliance"). As for sanctions, the Magistrate Judge recommended that default judgment be entered against Dery, that the court issue an adverse inference instruction against Alliance at trial, and that Dery and Alliance be held jointly and severally liable to AMACOR for its attorneys' fees and costs it expended resulting from the spoliation.

Before the court are the Objections filed by Dery and Alliance. For the reasons set forth below, both Objections are **OVERRULED**.

1

I.   **Background**

AMACOR alleges that Alain Dery, a former officer of AMACOR, provided Defendant Alliance, a company based in Quebec, Canada, with AMACOR's confidential information and trade secrets to help Alliance get into the magnesium recycling business and compete with AMACOR.

An employment agreement was executed between Dery, Alliance Chairman and CEO Michel Gagnon, and Alliance President Joel Fournier on March 1, 2020. (Ex. 2A[1]). Pursuant to that agreement, Dery would serve as Alliance's Vice President of Business Development, making approximately $18,000 USD per month. (*Id.*). But before Dery officially began his employment with Alliance, AMACOR discovered his duplicity through a forensic examination of his work computer and, on June 8, 2020, fired him. (Ex. 7).

That same day, AMACOR's counsel sent a letter to Gagnon and Fournier at Alliance, informing them of Dery's termination and the "smoking gun" evidence of Dery's "double dealing" gleaned through the forensic examination. (Ex. 4 at 2). Among other things, AMACOR learned that for the past year, Dery had been "providing consulting services to Alliance . . . and sharing with Alliance very sensitive pricing information relating to the purchase of magnesium scrap and responding to other requests, such as a financial model that Alliance could use." (*Id.*). The AMACOR Letter

---

[1] Citations to the exhibits herein are to exhibits that were admitted during the evidentiary hearing. Some exhibits, including Exhibit 2, are in French. The certified English translations of those exhibits include an "A" next to the exhibit number.

advised Alliance to "take all steps necessary to identify, retain, and preserve all data in your possession or under your control, including electronic data, that pertains [to] the matters referenced in this letter," and to do so "quickly" as "[t]he continued operation of relevant computer systems may overwrite data resident on servers and hard drives, including discoverable data that is invisible to the operating system." (*Id.* at 3).

On June 9, 2020, AMACOR's counsel sent a letter to Dery, memorializing the reasons for his termination and advising him to "take all steps necessary to identify, retain, and preserve all data in your possession or under your control, including electronic data, that pertains to [AMACOR] or your dealings with Alliance." (Ex. 7 at 2). The Termination Letter explained:

> To be clear, such data includes not only paper copies, but also emails, text messages, social media posts and other electronic documents, as well as backed-up, deleted, hidden, or orphaned data. It also includes storage media (*e.g.*, USB external storage devices, disks and backup tapes); all word-processed files, including drafts and revisions and metadata; all spreadsheets, including drafts and revisions; all databases; all data generated by calendaring, task management and Personal Information Management software (such as Microsoft Outlook Notes); and all data created with the use of I-Phones or similar devices. **Failure to do so in light of this advisory may constitute spoliation of evidence or have other adverse consequences for you**.

(*Id.*). Like the AMACOR Letter, Dery's Termination Letter concluded by stating:

> You must act quickly to preserve this information. The continued operation of computer systems may overwrite data resident on servers and hard drives, including discoverable data that is invisible to the operating system. Thus, all relevant data must be safeguarded from destruction for any reason, including but not limited to backup, restoration, deletion, destruction, and recycling.

(*Id.*).

Just before AMACOR filed suit on August 27, 2020, Alliance, through Gagnon and Fournier, implemented a plan by which Dery would perform magnesium scrap sourcing and other work for Alliance through a Chinese Company called Power Up China, owned by a colleague of Gagnon's, Jean Deragon, and pay Dery basically the same salary as offered previously ($18,000 USD monthly). (Filing No. 741 at 8; Filing No. 310 at 9; Filing No. 702 at 150, 152). In September and October 2020, the court entered a Standstill Order and an Agreed Injunction prohibiting Alliance from directly or indirectly using Dery's services. (Filing Nos. 28, 59).

Undeterred by the court's Orders—and as more fully explained in the court's Entry on Objections to the Magistrate Judge's Report and Recommendation Regarding Plaintiff's Renewed Motion for Contempt—Alliance continued its work with Dery through Power Up China during the injunction period for which Alliance underwrote Dery's compensation for his services. Gagnon, Fournier, and Dery engaged in efforts to conceal this arrangement by, for example, referring to Dery as "Mr. X," Dery communicating with Alliance through new email addresses that did not include his last name, Dery communicating with Alliance and Deragon through a newly purchased Motorola phone registered in the name of his ex-wife, and Dery communicating with Gagnon through Caroline Verreault's (Gagnon's wife) work-issued cell phone.

In its Motion for Sanctions for Spoliation, AMACOR alleges Dery and Alliance intentionally spoliated electronically stored information, including external storage drives, text messages, and emails that should have been preserved pursuant to the Termination Letter and the AMACOR Letter. AMACOR also alleges that Dery and

Alliance failed to provide timely, truthful, and complete written discovery responses—and to supplement discovery responses in violation of Rule 37(c)—which may have prevented some of the spoliation. This motion was referred to the Magistrate Judge, who held a four-day evidentiary hearing on July 12, 13, 14, and 31, and closing arguments on August 3, 2023. The Magistrate Judge found that Dery intentionally spoliated three classes of electronic evidence: (1) external hard drives containing AMACOR's confidential information that he took with him following his termination; (2) the Motorola cell phone, mentioned above; and (3) emails in the various email accounts that he used to communicate with Alliance and Deragon. (Filing No. 738 at 6-16). These "multiple instances of spoliation," reflected "a concerted effort by Dery to deprive AMACOR of evidence in this case." (*Id.* at 16). He concluded that that the sanction of default judgment was appropriate, as "[l]esser sanctions simply would not fit the wrong." (*Id.*).

The Magistrate Judge also found that Alliance, through Gagnon, intentionally spoliated text messages that Gagnon directed to be sent and received between Verreault's cell phone and Dery's Motorola cell phone from July 2020 through at least October 2020. (*Id.* at 16–19). By that time, Alliance had received the AMACOR Letter, putting it on notice to preserve relevant evidence, including text messages. (Ex. 4 at 3). In October 2020, Alliance received an interrogatory requesting the disclosure of all communications between Alliance and Dery within days of some texts being sent and received. (*Id.* at 18, citing Filing No. 449-5). Despite this, Alliance did not disclose the text messages in four separate responses to this interrogatory, and only took action to locate them once

5

AMACOR learned of their existence. (*Id.*, citing Exs. 64, 67, 69 & 75). By that time, Verreault's cell phone had broken and had been replaced by her employer. (*Id.*). All text messages were destroyed per her employer's policy. (*Id.*).

Based on these facts, and that fact that the Magistrate Judge did not believe Gagnon's reasons for not disclosing the texts,[2] the Magistrate Judge concluded that Alliance spoliated the messages with the intent to keep them from AMACOR in discovery. (*Id.* at 19). As sanctions, he recommended an adverse inference instruction and that Alliance be held jointly and severally liable with Dery for AMACOR's attorneys' fees and costs incurred because of the spoliation. (*Id.* at 20–21).

## II.     Standard of Review

"[R]esolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under [28 U.S.C.] § 636(b)(1)(B) or § 636(b)(3)." *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996). Consequently, "the district judge must review the magistrate judge's report and recommendation *de novo*." *Id.*; *see also* Fed. Rule Civ. P. 72(b) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). "But this *de novo* determination is not the same as a *de novo* hearing." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). In other words, the magistrate judge's credibility findings based on a witness's live testimony may not be disturbed. *Id*. ("The district court is not required to conduct another hearing to review the magistrate

---

[2] Gagnon testified he "did not receive the text messages so [he] – there was no way for [him] to know." (Filing No. 703 at 31).

6

judge's findings or credibility determinations.") (citing *United States v. Raddatz*, 447 U.S. 667, 675 (1980)); *see also Jackson v. United States*, 859 F.3d 495, 498–99 (7th Cir. 2017) (holding that a district court may not reject a magistrate judge's credibility findings based on a witness's live testimony without first holding a de novo evidentiary hearing). Instead, the district court may accept, reject, or modify the magistrate's recommendations, receive further evidence, or remand the matter to the magistrate judge with instructions. *Goffman*, 59 F.3d at 671 (citing 28 U.S.C. § 636 (b)(1), Fed. R. Civ. P. 72(b)).

### III. Applicable Law

Federal Rule of Civil Procedure 37(e) speaks specifically to the spoliation of electronically stored information and reads as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

The misconduct supporting sanctions must be established by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 777 (7th Cir. 2016).

### IV. The Objections

#### A. Alain Dery's Objections

7

Dery does not contest the Magistrate Judge's factual findings relating to his spoliation of electronically stored information. He argues instead that AMACOR has not been prejudiced by his actions and thus, an adverse inference instruction—and not default judgment—is the more appropriate sanction.

As an initial matter, the Magistrate Judge found that default judgment was warranted under Rule 37(e)(2)(C). Unlike Rule 37(e)(1), Rule 37(e)(2) does not require a finding of prejudice; it requires only a finding that the party "acted with the intent to deprive another party of the information's use in the litigation." As the Magistrate Judge noted, the Advisory Committee Notes to Rule 37 explain that under subdivision (e)(2), AMACOR did not have to prove that it was prejudiced by the fact that it was deprived of evidence because the finding of intent required by the subdivision supports the inference that the opposing party was prejudiced. Fed. R. Civ. P. 37(e) advisory committee notes;[3] *see also DR Distribs., LLC v. 21 Cent. Smoking, Inc.*, 513 F. Supp. 3d 839, 980–81 (N.D. Ill. 2021) ("If intent is established for [Rule37 (e)(2)] sanctions, prejudice need not be separately established because prejudice is assumed from the intent.").

---

[3] The Advisory Committee Notes to 2015 amendments provide:

> Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information. This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position.

As explained below, the preponderance of the evidence reflects that Dery acted with the intent to deprive AMACOR of the information contained in the three classes of spoliated electronic evidence at issue.

### 1. Intent to Deprive the Other Party of the Information's Use in Litigation

#### a. The Missing External Hard Drives

A forensic examination of Dery's laptop conducted after his termination by AMACOR determined that Dery had attached seven different personal external hard drives and flash drives to his laptop between April 17, 2020, and June 11, 2020. (Filing No. 704 at 27; Ex. 56). One of those devices was a 2-tetrabyte Seagate external hard drive onto which Dery downloaded AMACOR's "shared folder" and the contents of his personal iCloud account. (Filing No. 704 at 22). The shared folder included AMACOR's confidential information, including reports on customer calls, sales agreements, product specifications, pricing documents, sales plans, and the like. (*Id.* at 23–25). Dery testified that some of the information would have been useful to Alliance. (*Id.* at 39 (Dery: "Potentially some of the information would have been useful. I wouldn't say – I wouldn't say the opposite of that. I wouldn't contradict that.")).

At the evidentiary hearing, when confronted with his previous deposition testimony, Dery conceded that he downloaded the contents of his iCloud account and AMACOR's shared folder onto two other hard drives—the Passport Drive and the PF

Drive—and a USB Drive.[4] (*Id.* at 28–30). Dery understood the AMACOR information he downloaded needed to be preserved per the Termination Letter. (*Id.* at 32). Although he set aside three of the devices to make sure they were not lost or destroyed, the four devices that contained AMACOR's confidential information were never produced. (*Id.* at 34–37; Ex. 56). He does not know what happened to those devices even though, per AMACOR's digital forensics report, he accessed them not long before he allegedly lost them. (*Id.* at 36; Ex. 56). He "suspects" the devices were either thrown out or taken to an electronics recycler during a move to a new home in June 2020. (*Id.* at 33, 36–39). Any useful evidence that a forensics expert could have been gleaned from those devices is lost.

### b. The Motorola Cell Phone

After his termination from AMACOR, Dery purchased a Motorola cell phone, in his wife's name, to communicate primarily with Alliance, Jean Deragon of Power Up China, and Caroline Verreault from July to November 2020. (Filing No. 723 at 5, 7–13, 42–43; Ex. 93). Even though the calls and texts from that phone were relevant to this case, he did not disclose the phone's existence in discovery, (Exs. 45, 63), nor to his counsel, until March 2021, (Filing No. 723 at 18).

In March 2021, Dery made arrangements with his counsel to turn the phone over to a forensics company in Montreal, which was a few hours from his home. (*Id.* at 21).

---

[4] The forensic analysis showed that Dery had connected the USB flash drive to his laptop on June 11, 2020, just two days after he received the AMACOR Letter. (Filing No. 704 at 37; Ex. 56).

While in Montreal, he had dinner alone at a Chinese restaurant and thinks he left it there. (*Id.* at 20–22). He returned to the restaurant two more times—one time when it was closed—but the phone was not there. (*Id.* at 22–23, 76, 99).

The next day, he purchased a new Motorola phone to replace the one he lost. (*Id.* at 23). According to Dery, the sales associate told him the Motorola phone would be identical to the old one, and it had the same phone number. (*Id.* at 24). He did not check to ensure that the text messages or other data from the "lost" Motorola phone showed up on the new one. (*Id.* ("Q: You didn't look to see if any other content from your lost phone had actually shown up on the new phone, right? A: The – I looked at the telephone, and the icons looked like the other ones, so.")). He turned in the new Motorola phone to the forensic company for imaging, and, not surprisingly, the imaging revealed a blank phone. (*Id.* at 25). After the phone was returned to him, Dery never used it again. (*Id.* at 26).

Dery did not disclose the fact that he lost and replaced his Motorola phone, even though he amended his interrogatory response approximately a week later to include, for the first time, that he had used two cell phones. (Ex. 70 at 14). He did not do so because, "[a]s far as [he] was concerned, the replacement phone was exactly the same phone as the original Motorola phone." (Filing No. 723 at 26). AMACOR did not learn about the replacement phone until August 2022. (*Id.* at 27). At that time, AMACOR realized, from reviewing his phone records, that there were text messages that had not been produced. (*Id.*).

The Magistrate Judge recognized that some of the text messages from the Motorola phone have been produced by other individuals; however, the content of the

11

text messages between Dery's and Verreault's phones are lost forever. Those text messages may have been, as Dery says, simply a means to find out when Gagnon was available. (*Id.* at 47). But they may not have been, and AMACOR has been deprived of the ability to prove that fact because of Dery's actions.

### c. The Emails

On June 9, 2020, the day after his termination, Dery provided Alliance with a new email address to be used for all future communications—deaj2566@gmail.com. (Filing No. 723 at 30; Ex. 5A). On June 11, 2020, Dery asked Gagnon if he could ask Deragon to email him at another email address, deal722223@gmail.com, and Gagnon did so. (Exs. 9A, 11). Dery used yet another email account, daj427@videotron.ca, to communicate with Alliance and Deragon in 2020. (Filing No. 723 at 31–32).

In March 2021, Dery provided a forensic company access to his email accounts. (Ex. 95). The examination reflected that only 25 documents were contained in the deaj2566@gmail.com account. (*Id.*). None of his communications with Alliance were preserved. (*Id.* at 31 ("Q: You didn't have any communications with Alliance in that account that were preserved, right?  A: I remember having very little communications with Alliance, but if you received some from Alliance, then they existed.")). Alliance did, however, produce one of those emails. (*Id.*; Ex. 6A).

The forensic examination also reflected that only 18 documents were contained in the daj427@videotron.ca account, none of which were dated prior to November 5, 2020. (Ex. 95; Filing No. 723 at 33; *see also* Filing no. 723 at 34 ("Q: The deletion of the e-mails before November 5, 2020, occurred before you provided it to the forensic company,

12

right?  A: If I provided it to the . . . forensic company in March or April of 2021, that was the case, yes.")).  Dery did not produce any of the emails in the daj427@videotron.ca account.  (Filing No. 723 at 32).  Some of those emails, however, were produced by Alliance.  (*See*, *e.g.*, Exs. 6A, 24A, 29A, Ex. 30A).

No emails were produced from the deal722223@gmail.com account either. (Filing No. 723 at 34).  Dery testified he "had no recollection of [that] account." (*Id.* at 35 ("Q: But you testified at deposition that you are certain you must have used this e-mail address at some point, right?  A: Well, I have no recollection of this account.  I might have given this account to be used, but I don't remember it.")).  He says he contacted Gmail and was told the account did not exist.  (*Id.* at 34 ("So when my attorney asked me about this account, I, I checked to see what, what was the content that I had forgotten about.  And when I checked it, Google – or Gmail, rather, told me this account didn't exist.")).

Dery took no steps to preserve the emails in his accounts because he "thought that e-mails always stayed in the account, for forever." (*Id.* at 31).  As the Magistrate Judge noted, "emails do not simply disappear from email accounts; nor do email accounts simply disappear."  (Filing No. 738 at 14).

### d.  Prejudice

Based on the evidence set forth above, the court easily finds that Dery intentionally failed to preserve or produce the Seagate Drive, the USB Drive, the Passport Drive, and the PF Drive.  The court further finds Dery intentionally spoliated the data on the Motorola phone so the data would not be available for AMACOR's use in this case,

13

and that he intentionally deleted emails from deaj2566@gmail.com and daj427@videotron.ca as well as the deal722223@gmail.com account so they would not be produced in discovery. Prejudice is presumed by his intentional spoliation. *DR Distrib.*, 513 F. Supp. 3d at 980–81. But even if prejudice were not presumed, it is evident that AMACOR has been prejudiced.

Dery argues AMACOR has not been prejudiced because: (1) AMACOR has access to emails between Dery and Alliance; (2) the missing hard drives would not yield any additional information that AMACOR could use to prove its trade secrets claims; and (3) the missing text messages between Dery and Verreault are not critical to AMACOR's case.

First, not all emails between Dery and Alliance were produced. And none of the emails between Dery and Deragon, a non-party who lives in China, were produced. As the Magistrate Judge noted, "even if AMACOR were able to successfully obtain international non-party discovery from Deragon, there would be no way of knowing that Deragon produced all of the relevant emails given that Deragon was not under an obligation to preserve the emails." (Filing No. 738 at 15).

Second, the missing hard drives and flash drives do relate to AMACOR's trade secrets claims because they contain AMACOR's confidential information. This is the "core issue in this case." (*Id.* at 9). If Dery has those devices and has simply not turned them over, a forensic examination of those devices could reveal what he was doing with AMACOR's documents and information while he was working with Alliance through Power Up China. If Dery does not have those devices, a forensic examination of those

14

devices still could have disclosed, at the very least, the last access date.  (*Id.*).  The point is this: there is no way to know what could have been gleaned from those devices and thus, no way for AMACOR to obtain any useful evidence from those devices for purposes of this case.  (*Id.*).

Lastly, Dery claims the missing text messages between him and Verreault were "largely perfunctory and administrative in nature."  (Filing No. 744 at 6).  It is easy for Dery to say but impossible to prove because they are gone, forever.  As the Magistrate Judge concluded, "the fact is that AMACOR has been deprived of the ability to confirm that fact by Dery's intentional spoliation."  (*Id.* at 13).  No more need be said.

For these reasons, Dery's objections are **OVERRULED**.

### 2. Sanctions

Once a finding of intent is shown, Rule 37(e)(2) permits a court to impose the sanction of default judgment.  That sanction is appropriate here.  As the Magistrate Judge explained, Dery's multiple instances of intentional spoliation "evidence[] a concerted effort by Dery to deprive AMACOR of evidence in this case."  (Filing No. 738 at 16).  Because he "repeatedly flouted his discovery obligations in this case by spoliating evidence[,] [l]esser sanctions would not fit the wrong."  (*Id.*).

Dery's misconduct has also cost AMACOR a significant amount of time and money.  The massive record in this case confirms that fact.  Accordingly, the court agrees with the Magistrate Judge that AMACOR is entitled to its attorneys' fees and costs associated with the filing of this motion.

### B. Alliance's Objection

15

Alliance's objection relates to the text messages between Dery and Verreault, Gagnon's wife. Alliance argues the Magistrate Judge erred in issuing sanctions against it for two reasons. First, Alliance argues it did not have a legal duty to produce the text messages from Verreault's cell phone because Verreault was not employed by Alliance and her cell phone was the property of Verreault's employer, Deloitte Canada. Second, Alliance argues it did not act with the intent to deprive AMACOR of the content of the text messages for purposes of this litigation.

### 1.     Duty to Produce Text Messages

"A party has a duty to preserve evidence over which it has control and reasonably knows or could foresee would be material to a potential legal action." *Bryant v. Gardner*, 587 F. Supp. 2d 951, 967–68 (N.D. Ill. 2008). Documents held by an agent of a party are within that party's possession, custody, or control, and the party has an obligation to preserve and produce them. *DR Distrib.*, 513 F. Supp. 3d at 893.

Gagnon, Alliance's then-CEO, (Filing No. 702 at 116–17), testified he used his wife as a *de facto* secretary for the company on several occasions in 2020. (Filing No. 702 at 176). Gagnon explicitly directed his wife to text Dery on his behalf, (Ex. 23A), and Dery and Verreault exchanged several text messages and phone calls, (Ex. 93), despite Verreault having never met Dery, (Filing No. 702 at 176). Gagnon even sent Verreault a copy of the document preservation notice set forth in the AMACOR Letter. (Exs. 4 & 8; Filing No. 702 at 176–77). Based on this evidence, Verreault was, at the very least, a volunteer agent of Alliance. *DR Distribs.*, 513 F. Supp. 3d at 893. The text messages at issue were within Gagnon's control, and he could have easily obtained those

16

messages by asking Verreault for them. At any rate, regardless of whether Alliance was required to produce the text messages, it failed to disclose the text messages on four separate occasions in which it responded to AMACOR's discovery requests and supplemented those responses through May 2021. (Exs. 64, 67, 69, & 75). That alone warrants sanctions.

### 2. Intent to Deprive the Other Party of the Information's Use in Litigation

Alliance also argues it did not have the intent to deprive AMACOR of content of the text messages for two reasons. First, Alliance did not have any involvement in the inadvertent destruction of Verreault's cell phone. Second, the issue of Verreault's text messages did not arise until Fournier's July 2022 deposition. Soon thereafter, Alliance made sincere attempts to obtain the missing text messages and produced "scores" of emails, texts, and other ESI over which it has legal control.

Alliance's arguments are misplaced. Alliance, through Gagnon, failed to preserve Verreault's text messages with Dery despite AMACOR Letter's June 2020 preservation notice, until July 2022. In addition, as just discussed, Alliance made no effort to disclose their existence in its discovery responses. (Exs. 64, 67, 69, & 75). Alliance tries to excuse these failures by pointing to its efforts to obtain the text messages in August and September 2022. But those efforts were minimal. They consisted primarily of Alliance's counsel's efforts to contact Verreault to determine whether the text messages could be recovered from Deloitte and whether those messages were backed up to the Cloud. (Filing No. 742 at 13). Moreover, Alliance only undertook these efforts after AMACOR

17

discovered the existence of the text messages and requested that they be produced. By then, the text messages were already gone. (Filing No. 702 at 185–86). Alliance's belated efforts to retrieve the text messages does not excuse its intentional failure to preserve and disclose them for two years.

Alliance's argument that its production of other documents shows a lack of intent to spoliate the text messages is similarly unavailing. Indeed, "[s]elective preservation," and thus the selective failure to preserve, "can also reflect intent." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475–76 (E.D. Pa. 2020).

For these reasons, Alliance's objections are **OVERRULED**.

### 3. Sanctions

Alliance objects to the Magistrate Judge's recommended sanctions of an adverse inference instruction and that it be held jointly and severally liable with Dery for AMACOR's attorneys' fees and costs.

#### a. Adverse Inference Instruction

First, Alliance argues that an adverse inference instruction is not warranted because the text messages at issue arose after his termination from AMACOR. This argument is rejected. AMACOR's claims against Alliance and Dery include allegations of misconduct that arose after Dery's termination from AMACOR. AMACOR alleges in its Second Amended Complaint that Dery misappropriated and shared AMACOR's trade secret information with Alliance which Dery possessed after AMACOR terminated his employment. (Filing No. 195 ¶¶ 114–16, 124–28). The spoliated text messages between Dery and Verreault occurred during a time when Dery and Alliance were conspiring to

18

work together through Power Up China to cover up any paper or digital trail of their work together.  (Ex. 93).  These text messages could have provided evidence supporting AMACOR's trade secrets and/or its breach of fiduciary duty claim against Dery.  Therefore, Alliance's objection is **OVERRULED**.

### b. Joint and Several Liability

Lastly, in the event the court overrules all of Alliance's objections, Alliance maintains it should not be held jointly and severally liable with Dery for AMACOR's attorneys' fees and costs.  This is because "it is evident even from the R&R that Alliance did not act in concert with Dery to spoliate evidence."  (Filing No. 742 at 18).  Consequently, "Alliance should only be responsible for the attorneys' fees and costs that AMACOR expended in addressing the loss of the text messages on Deloitte Canada's phone."  (*Id.* at 19).  The court disagrees.  As the Magistrate Judge correctly found, Alliance (through Fournier and Gagnon) and Dery "conspired to conceal the fact that Dery was assisting Alliance through Power Up China and to avoid leaving a paper (or digital) trail regarding that fact."  (Filing No. 738 at 4).  Acts in furtherance of that conspiracy included Dery using the email addresses he spoliated, Dery purchasing and using a Motorola cell phone to communicate with Alliance, Dery communicating with Gagnon indirectly through Verreault, and the spoliation of evidence to further keep this information from AMACOR.  (*Id.*).  It follows that Alliance's and Dery's spoliation of evidence was done in furtherance of their conspiracy to conceal their work together from AMACOR. They are thus jointly and severally liable for the harm caused by that conspiracy.

19

## V. Conclusion

For the foregoing reasons, the court **OVERRULES** the Objections filed by Defendant Alain Dery (Filing No. 744) and Defendant Alliance (Filing No. 742) and **GRANTS** Plaintiff AMACOR's Motion for Sanctions for Spoliation (Filing No. 448). Default judgment is entered against Dery and an adverse inference instruction[5] is an appropriate sanction against Alliance.  In addition, AMACOR is awarded the attorneys' fees and costs it incurred resulting from the spoliation, which include the briefing of the present motion for sanctions, the preparation for and participation in the hearing on the present motion, and all discovery efforts that were required resulting from the spoliation of evidence.  Dery and Alliance are jointly and severally liable for the award of fees and costs awarded.

The parties are **ORDERED** to confer and make a reasonable attempt to agree on an appropriate fee award and are **FURTHER ORDERED** to report to the court whether those efforts were successful by **March 1, 2024**.

**SO ORDERED** this 23rd day of January 2024.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

[5] The propriety of an adverse inference instruction is moot, however, given the court's sanction of default judgment against Alliance in its Entry on Objections to the Magistrate Judge's Report and Recommendation Regarding Plaintiff AMACOR's Renewed Motion for Contempt.