UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADVANCED MAGNESIUM ALLOYS CORPORATION d/b/a AMACOR, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:20-cv-02247-RLY-MJD<br>) |
| ALAIN DERY, ALLIANCE MAGNESIUM INC., now d/b/a TERGEO CRITICAL MINERALS, INC., and WOGEN RESOURCES AMERICA LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**ENTRY ON DEFENDANTS ALLIANCE MAGNESIUM INC.'S AND WOGEN RESOURCES AMERICA, LLC'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF JAN GUY AND ARIE SHAKED**

AMACOR hopes to present at trial the "dual role" testimony of AMACOR executives Jan Guy and Arie Shaked. Dual role witnesses provide both fact and opinion testimony. Defendants Alliance Magnesium Inc. and Wogen Resources America, LLC, move to exclude or limit their expert opinions. For the reasons explained below, the motion to limit—but not exclude—their testimony is **GRANTED**.

**I.      Factual Background**

AMACOR brings parallel trade secret misappropriation claims under federal and Indiana state law against Alliance and Alain Dery, AMACOR's former Vice President of Sales and Marketing. Count IV asserts a claim under the Defend Secrets Act, 18 U.S.C. § 1836, and Count V asserts a claim under the Indiana Uniform Trade Secrets Act

1

("IUTSA"), Ind. Code § 24-2-3 *et seq.*

Jan Guy is the owner and CEO of AMACOR. On August 12, 2022, AMACOR identified Guy as a non-reporting liability expert under Rule 26(a)(2)(C) on the following subjects:

> (1) magnesium scrap pricing; (2) secondary magnesium pricing, including costing; (3) nonpublic information regarding AMACOR's customers, including data on customer requirements, preferences, idiosyncrasies, and contact information; (4) compilations of customers, suppliers, and other industry information that are unique to AMACOR; (5) marketing techniques; (6) trade secrets; (7) steps taken to keep trade secret information secret; and (8) actual, potential, and relative competitive advantages in the secondary magnesium industry provided by AMACOR's information, technologies, and accumulated knowledge and expertise, and proprietary information described in points (1) through (7), above.

(Filing No. 408-1, Rule 26(a)(2)(C) Expert Disclosures at 3–4). Guy will testify that Dery downloaded thousands of documents onto his personal laptop and external storage devices that contain AMACOR's proprietary, confidential, and trade secrets. (*Id.* at 4–5, 9–11). Dery then shared those documents with Alliance's investors, partners, and consultants. (*Id.* at 8). Guy will also testify Dery shared "knowledge of the details and specifications of AMACOR's trade secret and proprietary processes, methods, procedures, and know-how with Alliance and its investors, partners, and consultants." (*Id.*).

Arie Shaked is the COO of AMACOR. AMACOR identified Shaked as a non-reporting liability expert on the following subjects:

> (1) scrap procurement methods, including shipping and storage of scrap; (2) AMACOR's proprietary system for evaluating magnesium scrap quality; (3) the time and cost required to create and implement a successful scrap procurement system; (4) nonpublic information regarding AMACOR's

>customers, including data on customer requirements, preferences, idiosyncrasies, and contact information; (5) compilations of customers, suppliers, and other industry information that are unique to AMACOR; (6) trade secrets; (7) steps taken to keep trade secret information secret; (8) research into and development of new methods and methodologies for manufacturing, shipping, packaging, and marketing of product; sourcing scrap; and adaptation to different scrap grades; and (9) actual, potential, and relative competitive advantages in the secondary magnesium industry provided by AMACOR's information, technologies, and accumulated knowledge and expertise, and proprietary information described in points (1) through (8), above.

(*Id*. at 13–14).  Like Guy, Shaked will testify that Dery, as a high-level AMACOR executive, had access to and downloaded thousands of documents containing AMACOR's confidential, proprietary, and trade secret information, and shared that information with Alliance and its investors, partners, and consultants.  (*Id.* at 14–15, 17–20).  He will also testify "that over the years Dery was employed with AMACOR, AMACOR extensively educated Dery about all aspects of AMACOR's 'know-how' in the secondary magnesium industry."  (*Id.* at 17).  As a result, "Dery was uniquely positioned to share his knowledge of the details and specifications of AMACOR's trade secret and proprietary processes, methods, procedures, and know-how with Alliance and its investors, partners, and consultants."  (*Id*. at 18).

**II.   Discussion**

Alliance and Wogen argue Guy's and Shaked's expert testimony must be excluded under Federal Rule of Evidence 702 because it is unreliable and will not assist the trier of fact in determining a fact in issue.  *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis—requirements that must be met before the jury is allowed to hear and perhaps be

persuaded by the expert testimony."). But before analyzing whether their testimony should be excluded as expert opinion, the court must be persuaded Guy and Shaked are offering opinions based on the their respective qualifications, training, and methods (expert testimony, *see* Fed. R. Evid. 702), or whether they are offering an opinion based on their personal knowledge (lay testimony, *see* Fed. R. Evid. 701).

The testimony at issue relates to what Guy and Shaked perceive to be confidential and trade secret information owned by AMACOR. For example, Guy testified that, in her opinion, "[a]nything that has – that AMACOR deems to have value or a competitive advantage over our competition is what we deem to be a trade secret." (Filing No. 636-2, Guy Dep. at 72). She clarified that "none of the company names in the industry are confidential, but our customer list of who are our customers is very confidential." (Filing No. 533-12, Guy Dep. at 59). Shaked testified that he believes "[a]nything that is related to the business itself, how we do certain things," is a trade secret of AMACOR's. (Filing No. 612-2, Shaked Dep. at 82). He also testified that "any information that we collect, we put into combining with – combining the market information and the universal information that we use at AMACOR to build strategy here . . . is AMACOR's at the end of the day." (Filing No. 535-15 at 55).

Under both the Defend Trade Secrets Act and the IUTSA, whether information qualifies as a trade secret[1] is a fact-sensitive determination. *Learning Curve Toys, Inc. v.*

---

[1] Under the Defend Trade Secrets Act, information qualifies as a "trade secret if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain

*PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (noting the existence of a trade secret "requires an ad hoc evaluation of all the surrounding circumstances"); *Weston v. Buckley,* 677 N.E.2d 1089, 1092 (Ind. Ct. App. 1997), *trans. denied.*; *see also Amoco Prod. Co. v. Laird,* 622 N.E.2d 912, 916 (Ind. 1993) (observing "the same information that qualifies as a trade secret under one set of facts may not be afforded protection under a different set of facts").  Whether information is in fact a trade secret is "best 'resolved by a fact finder after full presentation of evidence from each side.'"  *Learning Curve*, 342 F.3d at 723 (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)); *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1075 (Ind. Ct. App. 2005) (noting what constitutes trade secret information is a question of law).  Thus, neither Guy nor Shaked can testify about "what is and what is not a trade secret." *PolyOne Corp. v. Lu*, No. 14 CV 10369, 2018 WL 4679577, at *9 (N.D. Ill. Sept. 28, 2018) (noting that "what is and what is not a trade secret . . . is a legal conclusion that experts are not entitled to make") (quoting *Skycam, Inc. v. Bennett*, No. 09-CV-294-GKF-FHM, 2011 WL 2551188, at *5 (N.D. Okla. June 27, 2011)).  But they may provide fact testimony that will enable a fact finder to determine whether the information Dery allegedly misappropriated and shared with Alliance satisfies the legal definition of a trade secret under federal and state law.

Next, Alliance and Wogen argue Guy's and Shaked's testimony is "suspect" because their expert disclosures identify documents that "could [not] possibly constitute

---

economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).  Indiana's definition is materially identical.  Ind. Code § 24–2–3–2.

AMACOR's trade secrets." (Filing No. 613, Alliance and Wogen's Motion to Exclude at 10). Included in their lists are (1) emails between Dery and Alliance about Dery's prospective employment contract with Alliance; emails between Dery and Alliance discussing the redesign of Alliance's website; and a letter from Alliance's outside legal counsel to AMACOR's outside legal counsel. (Rule 26(a)(2)(C) Expert Disclosures at 9–11, 19–21). Guy and Shaked concede those documents "do not contain AMACOR's trade secrets or confidential information." (Filing No. 636, AMACOR's Resp. at 7 n.1). At any rate, to the extent Guy's and Shaked's testimony about the scope of information they consider to be confidential and/or trade secret takes into consideration matters that Alliance and Wogen contend could not possibly meet the definition of a trade secret, Alliance and Wogen may challenge their testimony on cross-examination at trial.

Alliance's and Wogen's final argument is that "dual role witnesses" like Guy and Shaked will not assist the trier of fact due to the "inherent dangers" of dual-role testimony. *United States v. Jett*, 908 F.3d 252, 267 (7th Cir. 2018). "These dangers include the risk that a jury may unduly credit the[ir] opinion testimony due to a perception that [they] w[ere] privy to facts about the [D]efendant[s] not presented at trial or the risk that the jury may be smitten by [the] experts['] aura of special reliability." *Id.* (cleaned up). They also fear such dual role testimony could confuse the jury. The court disagrees. As the Magistrate Judge observed, Guy's and Shaked's testimony will be primarily fact testimony. (Filing No. 417, Order on Motion to Compel at 2 (noting most of the testimony regarding the topics addressed in Guy's and Shaked's expert disclosures "will likely be fact testimony")). To the extent there is any concern their testimony may

6

"careen[] from one type of testimony to the other," the court will instruct counsel to distinguish between lay and expert testimony when presenting their testimony to the jury and provide an instruction suggested by the *Jett* court at trial. *Jett*, 908 F.3d at 269–70.

### III.  Conclusion

For the reasons just stated, Alliance and Wogen's Motion to Limit (not exclude) Expert Testimony of Jan Guy and Arie Shaked (Filing No. 610) is **GRANTED**. The court's ruling does not preclude Guy and Shaked from offering expert testimony at trial. As AMACOR executives who have been involved in the magnesium recycling industry for decades, they may provide expert testimony on matters relating to the magnesium recycling industry, various grades of scrap, scrap pricing, and the like. The court will take matters relating to the scope of their testimony into consideration, if necessary, at the final pretrial conference.

**SO ORDERED** this 29th day of March 2024.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.